**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL ACTION NO. 3:10CV262-RJC-DSC**

| | |
|---|---|
| **GENERAL STAR NATIONAL INSURANCE COMPANY,** ) ) ) **Plaintiff,** ) v. ) ) ) ) **NORTH CAROLINA PUBLIC OFFICERS** ) **AND EMPLOYEES LIABILITY INSURANCE** ) **COMMISSION, MARK A. ISLEY, BILL** ) **LANE, ROBIN PENDERGRAFT AND** ) **FLOYD LEE BROWN,** ) ) **Defendants.** ) ) | **MEMORANDUM AND RECOMMENDATION AND ORDER** |

**THIS MATTER** is before the Court on Defendant Floyd Lee Brown's "Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1)" (Doc. 7) filed September 28, 2010, and Defendants North Carolina Public Officers and Employees Liability Insurance Commission, Mark A. Isley, Bill Lane and Robin Pendergraft's "Motion to Dismiss for Lack of Jurisdiction" (Doc. 13) filed October 12, 2010, and Defendant Floyd Lee Brown's "Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) & 12(b)(7)" (Doc. 16) filed October 22, 2010; and the parties' associated briefs and exhibits (Doc. 8, 14, 18, 19, and 20).

On July 6, 2011, this matter was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these Motions are now ripe for the Court's consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendant Floyd Lee Brown's original Motion to Dismiss be **DENIED AS MOOT** and Defendants' additional Motions to Dismiss be **GRANTED**,

as discussed below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 11, 2010, Plaintiff General Star National Insurance Company ("General Star") filed this action for declaratory judgment to determine the parties' rights and obligations under certain insurance policies that General Star sold to the North Carolina Public Officers and Employees Liability Insurance Commission ("Commission"). General Star was motivated to file this action after Defendant Floyd Lee Brown ("Brown") filed an action against Mark A. Isley ("Isley") and Bill Lane ("Lane") on June 7, 2010 in Mecklenburg County Superior Court. Floyd Lee Brown v. Special Agent Mark A. Isley, et al., Case No. 10 CVS 12239 (Mecklenburg Co. Sup. Ct., filed Jun. 7, 2010) (the "Brown case"). Brown alleges that during the course of a 1993 murder investigation, Isley and Lane, agents of the North Carolina State Bureau of Investigation, deliberately fabricated his confession to the murder and robbery. Brown further claims that as a result of that fabrication, as well as subsequent actions and omissions of Isley, Lane and their supervisors, he was wrongfully incarcerated for fourteen (14) years. On September 3, 2010, Brown amended his Complaint to allege that Robin Pendergraft ("Pendergraft"), former Director of the North Carolina State Bureau of Investigation, was liable for damages he suffered as a result of Pendergraft's failure to properly train or supervise Isley and Lane. The Brown case contains only state law claims.

General Star's declaratory judgment action seeks a determination that seven primary public officers and employees liability policies and excess liability policies it issued to the Commission between 1996 and 2003 do not provide coverage in the underlying Brown case. Doc. 11 ¶¶ 18-19; 33-35. General Star's original Complaint named as Defendants the State of North Carolina, the

Commission, Isley, Lane and Brown.[1]  Doc. 1.  On September 28, 2010, Brown filed a Motion to Dismiss for lack of subject matter jurisdiction, Doc. 7, arguing that 28 U.S.C. § 1332 does not allow for suits in which a state is a party.  General Star then filed the First Amended Complaint (the "Amended Complaint") on September 28, 2010 and removed the State of North Carolina as a Defendant.  Doc. 11.

In the Amended Complaint, General Star alleges that the policies it sold to the Commission provide no coverage for the acts of Isley, Lane or Pendergraft or that the Commission must pay $10.5 million in retentions before General Star will pay anything on the policies. Id. at Count I and II.  Based upon its proposed interpretation of the policies, General Star alleges that the amount in controversy in this case exceeds $75,000, exclusive of interest and costs. Id. at ¶ 2. General Star further alleges that it is a corporation organized and existing under Ohio law with its principal place of business in Connecticut, Id. at ¶ 5, and that all the individual Defendants are citizens of North Carolina. Id. at ¶¶ 6-8.  Finally, General Star alleges that the Commision "is a Named Insured under policies issued by General Star that are at issue in this litigation. The Commission is a nominal party named solely because it is a Named Insured under the relevant policies." Id. at ¶ 9.  Relying on those allegations, General Star asserts that the Court has jurisdiction over this action under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000 and there is diversity of citizenship among the parties. Id. at ¶ 2.

Defendants filed these Motions to Dismiss arguing that General Star's Amended Complaint

---

[1]The Court notes that in the original Complaint, General Star asserted that "Defendant Commission is an agency, department or instrumentality of North Carolina and is an insured under the policies issued by General Star.  In contracting with General Star . . . the Commission has waived any potentially applicable sovereign immunity and otherwise has consented to suit, and thus properly is named as a party in this Complaint."  Doc. 1 at ¶ 7.

should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2). Defendants contend that the Court has no jurisdiction under 28 U.S.C. § 1332 because the Commission is an alter ego of the State of North Carolina and therefore, there is not complete diversity among the parties. Additionally, Defendants argue that because the Commission is an alter ego of the State of North Carolina, the Eleventh Amendment bars the Court from exercising jurisdiction over General Star's claims against the Commission. Finally, Defendants argue that the Commission is a necessary and indispensable party under Federal Rule of Civil Procedure 19.

General Star asserts that the Commission is not an alter ego of the State of North Carolina, and even if it is an alter ego and thus a citizen of no state, its citizenship should be disregarded because it is a nominal party with no financial stake in the outcome of this litigation.

## II. DISCUSSION OF CLAIMS

At the outset, the undersigned respectfully recommends that because General Star filed its Amended Complaint, Doc. 11, on September 28, 2010, after Brown filed his first Motion to Dismiss, Doc. 7, that Motion to Dismiss should be <u>denied as moot</u>. It is well settled that a timely-filed amended pleading supersedes the original pleading, and that motions directed at superseded pleadings are to be denied as moot. <u>Young v. City of Mount Ranier</u>, 238 F. 3d 567, 573 (4th Cir. 2001) (amended pleading renders original pleading of no effect); <u>Colin v. Marconi Commerce Systems Employees' Retirement Plan</u>, 335 F.Supp.2d 590, 614 (M.D.N.C. 2004) (defendants' earlier motions for more definite statement, to dismiss first amended complaint, and for summary judgment as to one count of first amended complaint rendered moot by filing of plaintiff's second amended complaint); <u>Turner v. Kight</u>, 192 F. Supp. 2d 391, 397 (D. Md. 2002) (denying as moot motion to dismiss original complaint on grounds that amended complaint superseded original complaint).

4

**A. Standard of Review**

Pursuant to Rule 12(b)(1), a claim may be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The existence of subject matter jurisdiction is a threshold issue the court must address before considering the merits of the case. Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999). "[S]ubject matter jurisdiction goes to the very power of the court to act," South Carolina Dept. of Disabilities and Special Needs v. Hoover Universal, Inc., 535 F.3d 300, 303 (4th Cir. 2008). Federal courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party. Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006). The party seeking to adjudicate a matter in federal court bears the burden of demonstrating to the court that jurisdiction lies. Strawn v. AT&T Mobility LLC, 530 F.3d 293, 296 (4th Cir. 2008). When a federal court concludes that it lacks subject matter jurisdiction, the court must dismiss the complaint in its entirety. Arbaugh, 546 U.S. at 514.

It is well settled that a State is not a "citizen" for purposes of diversity jurisdiction. Moor v. County of Alameda, 411 U.S. 693, 717 (1973). Similarly, a state agency or political subdivision is not a "citizen" of the state if it is merely an "arm or alter ego of the State." Id. (finding county at issue not to be an arm or alter ego of the State); Maryland Stadium Auth. v. Ellerbe Becket, Inc., 407 F.3d 255 (4th Cir.2005) (finding University of Maryland to be an alter ego of the state). Because neither a state nor those public entities that are arms or alter egos of the state are "citizens of a state," they are "not able to sue or be sued in federal court under § 1332." Maryland Stadium Auth., 407 F.3d at 260. If a state or one of its arms or alter egos is a party to an action, "the district court does not have jurisdiction of the action under § 1332, even if all other parties to that action are citizens of different states." Id.

The Fourth Circuit has "articulated a nonexclusive list of four factors to be considered" in

determining whether an entity created by or affiliated with a state functions independently or as an arm or alter ego of that state. South Carolina Dept. of Disabilities, 535 F.3d at 303. These four factors are:

> (1) whether any judgment against the entity as defendant will be paid by the State or whether any recovery by the entity as plaintiff will inure to the benefit of the State; (2) the degree of autonomy exercised by the entity, including such circumstances as who appoints the entity's directors or officers, who funds the entity, and whether the State retains a veto over the entity's actions; (3) whether the entity is involved with state concerns as distinct from non-state concerns, including local concerns; and (4) how the entity is treated under state law, such as whether the entity's relationship with 'the State [is] sufficiently close to make the entity an arm of the State.'"

Id. (quoting Maryland Stadium Auth., 407 F.3d at 261-62).

**B. The Commission**

The North Carolina General Assembly enacted the "Defense of State Employees Act" under which the State may provide for the defense of any officer, agent or employee in any civil (or criminal) action brought against the defendant in his official or individual capacity on account of an act done or omission made in the scope and course of his employment as a state employee. N.C. Gen. Stat. § 143-300.3. If the State decides to provide for the defense of an employee, it has responsibility to pay the judgment or settlement up to the amount payable for one claim under the Tort Claims Act. N.C. Gen. Stat. § 143-300.6. The unit of state government that employed the employee is responsible for the first one hundred fifty thousand dollars ($ 150,000) of liability. N.C. Gen. Stat. § 143-300.6(a). The balance is paid from a fund to which all state agencies are required to contribute. N.C. Gen. Stat. § 143-300.6(a) and § 143-299.4. The amount payable for one Tort Claim has varied over time. To provide protection for state officers, agents and employees over and above the limits of the Tort Claims Act, the North Carolina General Assembly created the Commission within the North Carolina Department of Insurance. N.C. Gen. Stat. § 58-32-1.

The North Carolina Department of Insurance is itself an agency of the State of North Carolina established by the General Assembly under N.C. Gen. Stat. § 58-2-1 and administered by the Commissioner of Insurance. N.C. Gen. Stat. § 58-2-5. The Commissioner of Insurance is an elected constitutional officer of the State of North Carolina and a member of the North Carolina Council of State. N.C. Const. Art. III, §§ 7 and 8.

The Commission is comprised of eleven members. N.C. Gen. Stat. § 58-32-4. The Commissioner of Insurance appoints six members and the General Assembly appoints two members. N.C. Gen. Stat. § 58-32-4. The other three members are the Commissioner, the Secretary of the Department of Crime Control and Public Safety, and the Attorney General who sit ex officio. N.C. Gen. Stat. § 58-32-4.

The General Assembly has authorized the Commission to "acquire professional liability insurance covering the officers and employees, or any group thereof, of any State department, institution or agency or any community college or technical college." N.C. Gen. Stat. § 58-32-15. The General Assembly has authorized state departments, institutions, agencies, and community or technical colleges to pay the premiums for such insurance from funds made available to them for that purpose. N.C. Gen. Stat. § 58-32-15. Although the General Assembly has authorized departments and agencies to pay for insurance for their officers and employees, it has expressly provided that the purchase of such insurance does not constitute a waiver of the department's or the employee's sovereign immunity. N.C. Gen. Stat. § 58-32-15(c).

The Commission relied on the authority granted to it by the General Assembly to purchase the policies at issue in this case. Under the terms of the General Star policies, the "Insured(s)" are the Commission and all persons covered by the Defense of State Employees Act, N.C. Gen. Stat. § 143-300.2 et seq. Doc. 11, Ex. B at 1. Under the policies, after the Insureds have paid the

specified retention, General Star is responsible to pay those damages for which the Insureds are legally responsible up to the policy limits. The dispute in this case is whether the actions in the Brown case come within the scope of General Star's policies and, if so, how much retention the Commission must pay before General Star is obligated to pay any damages awarded against Isley, Lane or Pendergraft.

### C. Application of Four Factors to The Commission

To determine whether the Commission functions as an arm or alter ego of the State of North Carolina, the Court must examine the four Maryland Stadium Authority factors. The first factor is "the most salient" of the four factors-whether a judgment against the entity would be paid by the State. Maryland Stadium Auth., 407 F.3d at 262. However, as the Fourth Circuit noted in Maryland Stadium Authority, this factor must be modified to account for the particular issues at stake in the litigation. Id. at 261-262. For purposes of determining diversity jurisdiction under § 1332, the Fourth Circuit has held that the impact of the litigation on the state's treasury is not dispositive. Id. at 262, n. 11. Rather, in appropriate circumstances, the Fourth Circuit has modified the inquiry under the first factor to whether the results in the case "inure to the benefit of the state." Id. at 262.

The insurance policies at issue are part of an integrated North Carolina policy to attract talented individuals to enter public service and to mitigate state employees' concerns over liability in pursuit of the public good. That policy also seeks to provide compensation for parties injured by state employees acting within the scope and course of their employment. The General Star policies state that the Insureds are the Commission and all persons under the "North Carolina Defense of State Employees Act." Doc. 11, Ex. B at 1. General Star and the Commission dispute the amount of retention that the Commission must pay before General Star becomes obligated to pay damages under the policies. Id. at ¶ 31. The Commission asserts that it must only pay a single $500,000

retention before General Star's obligation to pay is triggered. General Star contends that the Commission must pay $10.5 million in retentions before it has an obligation to pay on any claims. Id. at Count II.

Because this is a declaratory judgement action, the Commission is not directly exposed to liability. However, the practical effect of a judgment increasing the Commission's retention obligations from $500,000 to $10.5 million would be to deprive state employees of the benefits that the Commission bargained for when it purchased the insurance policies from General Star. The declaratory judgment will not take money from the North Carolina treasury, but it will reduce the value of all the policies that the Commission purchased with state funds from General Star. In this context, a judgment depriving the State of the benefits of its bargain would be indistinguishable from forcing the State to pay higher premiums for the desired coverage. Both would cost the State money.

Furthermore, if this were an action for money damages instead of declaratory judgment, the monies to pay an award against the Commission would come from the state treasury. The Commission is an entity within the North Carolina Department of Insurance. The Commission has no power to tax, or any independent means of acquiring funds. It is funded by the State through allocations to the Department of Insurance. It has no authority nor capability to obtain, hold or use funds other than in the direct exercise of the narrow, public functions for which it was created. See, N.C. Gen. Stat § 58-6-25(d)(7); see also Maryland Stadium Auth., 407 F.3d at 264-65 (explaining that the fact that a public entity lacks the power to tax or otherwise obtain funds independent from the state treasury is a strong indication that it is an arm or alter ego of the State). Any money judgment against the Commission would have to be paid by the State, and any money judgment in favor of the Commission would inure to the benefit of the State.

The second factor is whether the Commission exercises a significant degree of autonomy from the State. Maryland Stadium Auth., 407 F.3d at 261. The Fourth Circuit has stated that courts should examine the operational autonomy of the entity, "by considering whether the state retains a veto over the entity's actions, the origins of the entity's funding, and who appoints the entity's directors." Id. The Commission exercises no autonomy here. It is contained within the Department of Insurance. N.C. Gen. Stat. § 58-32-1. Six of its eleven members are appointed by the Insurance Commissioner, a state official elected by the people of North Carolina. N.C. Gen. Stat §§ 58-2-5, 58-32-1. Two others are appointed by the General Assembly. The other members are the Insurance Commissioner, the Attorney General, who is elected by the people of North Carolina, and the Secretary of the Department of Crime Control and Public Safety, who is appointed by the Governor, or their designates. N.C. Gen. Stat § 58-32-1. The fact that the Commission's members are either elected officials or are appointed by elected officials "is a key indicator of state control." Maryland Stadium Auth., 407 F.3d at 264; see also, South Carolina Dept. of Disabilities, 535 F.3d at 307.

The Commission's expenses are paid by the State. The salaries for the Commission's employees and the rates at which its members are reimbursed for their expenses are set by statute. See N.C. Gen. Stat §§ 58-32-5, 58-32-10. The Commission has no revenues and no operating funds other than those monies provided by the State. More importantly, the money to pay premiums for the insurance policies in question comes from state departments, institutions, agencies, community and technical colleges. N.C. Gen. Stat. § 58-32-15. Finally, the state Attorney General, rather than private counsel, is defending the Commission. Maryland Stadium Auth., 407 F.3d at 264-65 (citing Cash v. Granville County Bd. Of Educ., 242 F.3d 219, 225, (4th Cir. 2001) (which noted lack of control evidenced by fact that local school board was represented by private counsel instead of the

Attorney General)).

The third factor addresses whether the Commission is involved with state concerns as distinct from non-state concerns or local concerns. The Commission's sole function is to acquire and generate the research necessary for acquiring group liability insurance for state agencies and political subdivisions to purchase on behalf of their employees. N.C. Gen. Stat §§ 58-32-10, 58-32-15. It serves a statewide function of ensuring that state and local officials are covered by professional liability insurance. See South Carolina Dept. of Disabilities, 535 F.3d at 307-308 (finding that the third factor favored treating the South Carolina Office of the Insurance Reserve Fund as an arm of that state despite the Fund's providing insurance to individual agencies and localities because the Fund did so on a statewide basis). This action concerns the Commission's activities with respect to providing insurance for state employees as opposed to any locality or its employees. The Commission's insurance activities are not limited to local entities, and the benefits will not inure only locally but to the entire State. This third factor favors treating the Commission as an alter ego or arm of the State. See id.

The fourth factor addresses how the entity is treated under state law. This also favors finding that the Commission is an alter ego or arm of the State. In addressing this factor, the Court "may consider both the relevant state statutes, regulations, and constitutional provisions which characterize the entity, and the holdings of state courts on the question." Maryland Stadium Auth., 407 F.3d at 265. Again, the Commission was created within the Department of Insurance, a department of the State "charged with the execution of the laws relating to insurance," and the salaries and expenses necessary for its existence are set and paid for by the State. See N.C. Gen. Stat §§ 58-2-1, 5832-1, 58-32-5, 58-32-10. The members of the Commission are either elected

11

officials or appointed by elected officials. As stated above, the state Attorney General, rather than private counsel, is defending the Commission. See West Virginia Investment Management Bd. v. Residential Accredited Loans, Inc., No. 2:10-cv-000461, 2010 WL 3418314, at *5 (S.D.W.Va. Aug. 26, 2010) (finding representation by Attorney General goes to the fact that entity was ultimately under the control of and must answer to the Governor). By North Carolina law, the Commission has no function, purpose or authority except for acquiring liability insurance for public employees.

After reviewing General Star's and Defendants' arguments and the Maryland Stadium Authority factors, it is clear that the Commission is an arm or alter ego of the State of North Carolina. The Commission is not a "citizen" of a state subject to diversity jurisdiction under 28 U.S.C. § 1332. Therefore, the Court lacks subject matter jurisdiction over this action.

### III. ORDER

**IT IS ORDERED** that all further proceedings in this action are **STAYED** pending the District Judge's ruling on this Memorandum and Recommendation and Order.

### IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that the Defendant Floyd Lee Brown's "Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1)" (Doc. 7) filed September 28, 2010 be **DENIED AS MOOT**; and Defendants North Carolina Public Officers and Employees Liability Insurance Commission, Mark A. Isley, Bill Lane and Robin Pendergraft's "Motion to Dismiss for Lack of Jurisdiction" (Doc. 13) filed October 12, 2010, and Defendant Floyd Lee Brown's "Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) & 12(b)(7)" (Doc. 16) filed October 22, 2010 be **GRANTED** and the First Amended Complaint for Declaratory Judgement be **DISMISSED WITH PREJUDICE.**

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Order to counsel of record; and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED AND ORDERED.**

Signed: July 29, 2011

David S. Cayer
United States Magistrate Judge