IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:10-cv-262-RJC-DSC

| | |
|---|---|
| GENERAL STAR NATIONAL INSURANCE COMPANY, ) ) ) Plaintiff, ) ) v. ) ) NORTH CAROLINA PUBLIC OFFICERS ) AND EMPLOYEES LIABILITY ) INSURANCE COMMISSION, MARK A. ) ISLEY, BILL LANE, ) ROBIN PENDERGRAFT, AND FLOYD ) LEE BROWN, ) ) Defendants. ) ) | **MEMORANDUM AND ORDER** |

**THIS MATTER** comes before the Court on Defendant Floyd Lee Brown's ("Brown") Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1), (Doc. No. 7), Defendants North Carolina Public Officers and Employees Liability Insurance Commission ("Commission"), Mark A. Isley ("Isley"), Bill Lane ("Lane"), and Robin Pendergraft's ("Pendergraft") (collectively with Brown, "Defendants") Motion to Dismiss for Lack of Jurisdiction, (Doc. No. 13), and Brown's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) & 12(b)(7), (Doc. No. 16).

On July 29, 2011, the Magistrate Judge entered a Memorandum and Recommendation ("M&R"), recommending that this Court grant Defendants' second and third motions and dismiss Brown's first motion as moot. (Doc. No. 22). Plaintiff, General Star National Insurance Company ("General Star"), timely filed objections, (Doc. No. 23).

After a de novo review, the Court adopts the Magistrate Judge's recommendations, **DISMISSES** Brown's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1), (Doc. No. 7), **GRANTS** Defendants' other motions to dismiss, (Doc. Nos. 13, 16), and **DISMISSES** General Star's complaint.

**I.      STANDARD OF REVIEW**

The Federal Magistrate Act provides that "a district court shall make a de novo determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); Camby v. Davis, 718 F.2d 198, 200 (4th Cir.1983). "By contrast, in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (quoting FED. R. CIV. P. 72 advisory committee's note).

**II.     BACKGROUND**

This Court adopts the facts as set forth in the M&R because General Star does not specifically object to them. (Doc. No. 22 at 2-4). "[General Star] filed this action for declaratory judgment to determine the parties' rights and obligations under certain insurance policies that General Star sold to the [Commission.]" (Doc. No. 22 at 2). General Star was motivated to file this action after Brown filed a state action against Isley and Lane for allegedly fabricating his confession to a murder. (Id.).

## III. ANALYSIS

The Magistrate Judge concluded that this Court lacked subject matter jurisdiction. (Doc. No. 22). General Star asserted diversity jurisdiction under 28 U.S.C. § 1332. (Doc. No. 11 at 2). Section 1332 grants federal courts jurisdiction over cases between citizens of different states, where over $75,000 is in controversy. 28 U.S.C. § 1332(a)(1). But "a State is not a 'citizen' for purposes of the diversity jurisdiction." Moor v. Alameda Cnty., 411 U.S. 693, 717 (1973). Similarly, a state agency or political subdivision is not a "citizen" of the state if it is merely an "arm or alter ego of the State." Id.; Md. Stadium Auth. v. Ellerbe Becket, Inc., 407 F.3d 255, 260-61 (4th Cir. 2005).

> But an entity created by the State which functions independently of the State with authority to sue and be sued, such as an independent authority or a political subdivision of the State, can be a "citizen" for purposes of diversity jurisdiction. The line separating a State-created entity functioning independently of the State from a State-created entity functioning as an arm of the State or its alter ego is determined by the particular legal and factual circumstances of the entity itself. To define that line, [the Fourth Circuit has] articulated a nonexclusive list of four factors to be considered: (1) whether any judgment against the entity as defendant will be paid by the State or whether any recovery by the entity as plaintiff will inure to the benefit of the State; (2) the degree of autonomy exercised by the entity, including such circumstances as who appoints the entity's directors or officers, who funds the entity, and whether the State retains a veto over the entity's actions; (3) whether the entity is involved with state concerns as distinct from non-state concerns, including local concerns; and (4) how the entity is treated under state law, such as whether the entity's relationship with the State is sufficiently close to make the entity an arm of the State.

S.C. Dep't. of Disabilities and Special Needs v. Hoover Universal, Inc., 535 F.3d 300, 303 (4th Cir. 2008) (internal quotations and citations omitted).

The Magistrate Judge determined that the Commission was an arm of the state. (Doc. No. 22 at 12). Thus, the Magistrate Judge could not consider it a "citizen" under 28 U.S.C. § 1332 and ruled that this Court lacked subject matter jurisdiction. (Id.). This Court agrees.

### A. State Treasury

"[T]he most important consideration is whether the state treasury will be responsible for paying any judgment that might be awarded." Md. Stadium Auth., 407 F.3d at 261. In Md. Stadium Auth., the alleged arm of the state was the plaintiff. Therefore, the court reversed this inquiry and asked "whether any recovery by the entity will inure to the benefit of the state." Id. at 262. A modification of this factor is also required here because this is a declaratory judgment action and no party will be immediately responsible for damages. In Lansing Community College v. National Union Fire Insurance Company, the court faced such a quandary. 681 F. Supp. 2d 868, 869-70 (W.D. Mich. 2010). The court had to decide whether a community college was an arm of the state in evaluating its jurisdiction in a declaratory judgment case. Id. The Court stressed that this first factor is really inquiring into "whether, hypothetically speaking, the state treasury would be subject to potential legal liability." Id. at 870; see also Regents of the Univ. of Cal. v. Doe, 519 U.S. 425, 431 (1997) (focusing on the entity's potential legal liability in evaluating Eleventh Amendment immunity rather than any eccentricity in the particular procedural posture of the case) (emphasis added). Thus, this Court considers whether the state would be liable for a hypothetical money judgment against the Commission.

The Commission is an entity within the North Carolina Department of Insurance ("Department"). (Doc. No. 22 at 9). The Commission has no power to tax, or any independent means of acquiring funds. (Id.). "The absence of the power to tax is a strong indication that an entity is more like an arm of the state than like a county or city, because that enablement gives an entity an important kind of independence." Md. Stadium Auth., 407 F.3d at 264. Instead, the Commission is funded through state appropriations to the Department. N.C. GEN. STAT. § 58-6-25(d)(7). The Commission cannot "obtain, hold, or use funds other than in the direct exercise of

4

the narrow, public functions for which it was created." (Doc. No. 22 at 9). Any money judgment against the Commission would have to be paid from the state's treasury. This most important of factors weighs in favor of counting the Commission as an arm or alter ego of the state.

B.     **Autonomy**

The Court examines the autonomy factor by examining "whether the state retains a veto over the entity's actions, the origins of the entity's funding, and who appoints the entity's directors." Md. Stadium Auth. 407 F.3d at 261. The state does not appear to have any actual veto power over the Commission's decisions. See N.C. GEN. STAT. § 58-32-10. Its funding does, however, come exclusively from the state. (Doc. No. 22 at 10). Any employees that the Commission hires are paid by the state. N.C. GEN. STAT. § 58-32-10.

All of the members of the Commission are either appointed by the Insurance Commissioner, a publicly elected state official, or the General Assembly, or are themselves public state officials. N.C. GEN. STAT. §§ 58-2-5, 58-32-1. The Fourth Circuit has held that gubernatorial appointment "is a key indicator of state control." Md. Stadium Auth., 407 F.3d at 264. Likewise, appointment by other statewide officials is persuasive evidence that the Commission is an arm of the state. The First Circuit noted that appointment by elected officials is a significant piece of evidence suggesting that an entity is a state alter ego. Univ. of R.I. v. A.W. Chesterton Co., 2 F.3d 1200, 1207 (1st Cir. 1993); see also Md. Stadium Auth., 407 F.3d at 264 (citing Chesterton). But the court discounted the importance of this fact where the entity was otherwise shielded from political pressures through staggered terms and minimal compensation. The Commission members are unpaid and serve staggered terms. N.C. GEN. STAT. § 58-32-5. But the Fourth Circuit has also found that the state attorney general's

5

representation of an entity is evidence that the entity is an alter ego of the state. Md. Stadium Auth., 407 F.3d at 264-65. Attorney General Roy Cooper represents the Commission in this litigation. See (Doc. No. 20 at 15). Although a closer case than the first factor, this second factor also weighs in favor of finding the Commission is an arm of the state, and not a citizen of North Carolina.

### C. Statewide Concern

The Commission is engaged in an area of statewide concern. "The Commission's sole function is to acquire and generate the research necessary for acquiring group liability insurance for state agencies and political subdivisions to purchase on behalf of their employees." (Doc. No. 22 at 11) (citing N.C. GEN. STAT. §§ 58-32-10, 58-32-15). In Hoover, the Fourth Circuit held that the South Carolina Insurance Reserve Fund ("Fund") was engaged in an area of statewide concern. 535 F.3d at 307. The defendant argued that the Fund was concerned with local matters because it provided insurance to cities, counties, and school districts. Id. But the court answered that the Fund was concerned with statewide issues because it provided insurance to cities, counties, and school districts all across the state. Id. The Commission's activities are analogous. It arranges insurance policies for state and local officials all across North Carolina. N.C. GEN. STAT. §§ 58-32-10, 58-32-15. This factor also weighs in favor of the Commission being an arm of the state.

### D. State Law

State law treats the Commission as an arm of the state. It was created within the Department of Insurance. N.C. GEN. STAT. § 58-32-1. The Department is a "separate and distinct department, which is charged with the execution of laws relating to insurance." N.C.

GEN. STAT. § 58-2-1.  But the Department is headed by a state official, as the Insurance Commissioner is selected in a statewide election.  N.C. GEN. STAT. § 58-2-5.

The Commission is an alter ego, or arm, of the state.  The North Carolina state treasury would be responsible for a hypothetical money judgment against the Commission.  This is the most important factor in examining whether the Commission is an arm of the state.  Md. Stadium Auth., 407 F.3d at 261.  The Commission also lacks autonomy, engages in an area of statewide concern, and North Carolina law treats it as an arm of the state.  The Commission, therefore, cannot be considered a "citizen" under 28 U.S.C. § 1332 and diversity jurisdiction does not exist.  Moor v. Alameda Cnty., 411 U.S. 693, 717 (1973).

### E.     Nominal Party

General Star argues that even if the Commission is an arm of the state, the Court should disregard its non-citizenship, and find diversity jurisdiction, because the Commission is merely a nominal party.  (Doc. No. 23 at 20).  "[A] federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy."  Navarro Sav. Ass'n v. Lee, 446 U.S. 458, 461 (1980).

> A nominal party has no personal stake in the outcome of the litigation and is not necessary to an ultimate resolution. . . . A party is necessary if, in his absence, complete relief cannot be given.  Necessary parties are those who have or claim material interests in the subject matter of a controversy, and those interests will be directly affected by an adjudication of the controversy.

Dempsey v. Transouth Mort. Corp., 88 F. Supp. 2d 482, 484 (W.D.N.C. 1999).  The Fourth Circuit has held that where an insurer has paid something less than an entire loss suffered by the insured, the insured is also a real party in interest.  Va. Electric & Power Co. v. Westinghouse Electric Corp., 485 F.2d 78, 83 (4th Cir. 1973).  In Westinghouse, the insured suffered a

7

$2,200,000 loss stemming from a power plant failure. The insured sued the engineers and manufacturer of the plant. Its insurance company covered $1,950,000, leaving the insured to cover the remaining $150,000. The court held that the insured remained a party in interest and could sue for the entire loss, despite its subrogation agreement with the insurance company. Westinghouse, 485 F.2d at 83-84.

The Commission is a named insured on the policy. (Doc. No. 11 at 3). General Star is asserting that the insurance policy obliges the insured officers involved to pay fourteen $500,000 retentions, totaling $7,000,000, before it requires General Star to pay anything out. (Doc. No. 11). The Commission has a sufficient interest in the construction of the policy it purchased on behalf of state employees and under which it is insured. Because the Commission purchased the policies at issue and is the policyholder, it is also a real party in interest under Federal Rule of Civil Procedure 17(a)(1)(F). Also, the state is ultimately responsible for amounts its employees are held liable for paying. N.C. GEN. STAT. § 143-300.6. Interpreting these policies as General Star reads them could cost North Carolina millions. The state, through the Commission, has a substantial interest in the outcome of this case.

General Star cites a District of Nebraska case to show that the Commission is merely a nominal party. (Doc. No. 23 at 20-24) (citing Jakoubek v. Fortis Benefits Ins. Co., 301 F. Supp. 2d 1045 (D. Neb. 2003)). The Fortis court held that the state's interest in an insurance policy, that it selected and negotiated for its employees, was too remote to make it a real party in interest to a declaratory judgment action determining an employee's coverage. Id. at 1051. But Nebraska was not insured under the policy in question and had no risk of paying out any retention or deductible in the event that the insurance company succeeded in denying the insured

employee coverage.  Id.  North Carolina, though, does face such a risk and the Commission is insured under the same policy.

The Commission is a real party in interest and its presence in this suit deprives the Court of diversity jurisdiction.  Cf. Beaufort County School District v. United National Insurance Company, 519 F. Supp. 2d 609, 612 (D.S.C. 2007) (holding that state insurance trust had substantial interest in declaratory judgment action evaluating number of self-insured retentions required by policy where trust was liable for retentions).

## IV.  CONCLUSION

This Court lacks subject matter jurisdiction to hear this case.  The Magistrate Judge recommended that the Court dismiss with prejudice.  (Doc. No. 22 at 12).  But the Fourth Circuit has held that "[i]f a court does not have subject matter jurisdiction over a claim, it can only dismiss without prejudice; it cannot reach the merits."  Beazer East, Inc. v. United States Navy, No. 96-1736, 1997 WL 173225, at *5 (4th Cir. Apr. 11, 1997) (emphasis added).

**IT IS, THEREFORE, ORDERED** that:

1. Brown's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1), (Doc. No. 7), is **DENIED AS MOOT**;

2. The Commission, Isley, Lane, and Pendergraft's Motion to Dismiss for Lack of Jurisdiction, (Doc. No. 13), is **GRANTED**;

3. Brown's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) & 12(b)(7), (Doc. No. 16), is **GRANTED**; and

4. General Star's First Amended Complaint for Declaratory Judgment, (Doc. No. 11), is **DISMISSED WITHOUT PREJUDICE**.

Signed: September 21, 2011

Robert J. Conrad, Jr.
Chief United States District Judge